IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ONE MEDIA IP LIMITED )<br>As successor-in-interest to )<br>TELOS HOLDINGS, INC. )<br>d/b/a POINT CLASSICS )<br>  )<br>    Plaintiff, )<br>  )<br>v. )<br>  )<br>S.A.A.R. SrL, )<br>BELIEVE SAS d/b/a BELIEVE DIGITAL GROUP )<br>And BELIEVE US, )<br>HENRY HADAWAY ORGANISATION, LTD. )<br>HHO LICENSING LIMITED, )<br>HENRY HADAWAY, and )<br>DOES 1-10, inclusive )<br>  )<br>    Defendants. ) | Civil Action No.: 3-14:0957<br>JURY DEMAND |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BELIEVE SAS'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff One Media IP Limited d/b/a Point Classics ("Point Classics") opposes defendant Believe SAS's ("Believe") motion to dismiss for lack of personal jurisdiction. (Docket Entry 38) For the reasons stated below, the Court should deny Believe's motion.[1]

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff's predecessor-in-interest, Point Classics, LLC, which still maintains a significant financial interest in the outcome of this litigation, was a Tennessee Limited Liability Company formed and operated under the laws of this State. Point Classics, LLC, though terminated in

---

[1] The vast majority of Plaintiff's arguments contained herein were previously set out in its Opposition to Defendant SAAR, SrL's motion to dismiss (Doc. No. 22) and are recited herein solely for purposes of preserving the record.

2009, continued typical winding down business activities, as expressly allowed under the Tennessee Code, as recent as July 2014. Despite what Believe asserts, Believe has purposefully availed itself of this forum as a direct result of its assistance in furthering the infringement of Plaintiff's copyrights via Believe's "global" distribution agreement with Defendant SAAR. Believe, just like SAAR, has reaped, and continues to reap, the benefits of doing business in the United States market, including in Tennessee, and holds itself out to the public as being a global distribution company. Moreover, jurisdiction by this Court is reasonable, proper, and required because the interests of this Court and Plaintiff are quite high as a direct result of Believe's actions. Accordingly, Believe's motion should be denied.

## II.      FACTUAL BACKGROUND.

### A.     Point Classics

Point Classics is a music library that owns and controls the copyrights in and to numerous classical music sound recordings (the "Point Classics Catalog"). (Docket Entry 15, Amended Complaint ¶ 2 (the "Complaint")). Point Classics has registered all of the relevant copyright registrations with the United States Copyright Office pertaining to the Point Classics Catalog. (Complaint ¶ 2). Plaintiff's predecessor-in-interest, Point Classics, LLC, was a limited liability company organized under the laws of the State of Tennessee. (Complaint ¶ 22, FN 1). Plaintiff licenses its rights in the Point Classics Catalog to various third parties such as iTunes, Amazon, MP3.com, Digital Music Group International, Compendia Media, and other digital distributors via non-exclusive licensing agreements. (Complaint ¶ 22). Plaintiff and its predecessors in interest have expended significant resources to defend their chain of title in the Point Classics

Catalog, which title has been recognized and upheld by various courts, including this Honorable Court.[2] (Complaint ¶ 33).

B. Infringement and Negotiations of License Agreement

On or about August 2013, Point Classics discovered that portions of the Point Classics Catalog to which it owns title had been illegally distributed by Defendant SAAR, and that SAAR had, in turn, apparently sublicensed the catalog to third parties, including other labels named Sarabandas and Pirames, all of which have been distributed by Defendant Believe and can be found on digital storefronts such as iTunes. After SAAR failed to respond to Point Classics' initial letter of inquiry dated August 27, 2013, Point Classics issued a takedown demand with iTunes on September 26, 2013. On October 1, 2013, iTunes notified Point Classics that the provider, Believe, "disagree with your claim" and instructed Point Classics to attempt to directly resolve the dispute with Believe.

On October 23, 2013, after receiving contact information for Believe from iTunes, counsel for Plaintiff emailed Sofia Sanchez-Ali (Legal Administrator for Believe) a copy of the SAAR letter of inquiry from August 2013 along with a copy of the iTunes report. So began nearly one year of stonewalling, no cooperation and continued infringing activities on the part of Believe. Sanchez-Ali refused to provide contact information for SAAR. After additional follow up emails on November 6 and November 12, there was no further correspondence from Believe until several months later. However, iTunes provided a partial royalty statement, which reflected over $6,000.00 in royalties solely as it related to the small number of initial takedown requests

---

[2] *See Platinum Entertainment, Inc. v. Point Classics, LLC*, U.S. District Court for the Middle District of Tennessee, Case No. 3:01-1413; *Point Classics, LLC v. MP3.com, Inc.* U.S. District Court for the Middle District of Tennessee, Case No. 3:03-1154; *Point Classics, AG v. Disky GmbH Musik & Video*, Case No. 308 O 388/95 (District Court of Hamburg, Germany, June 11, 1999); and *Point Classics, LLC v. Klaus Kraemer*, Case No. 308 O 113/01 (District Court of Hamburg, Germany, July 7, 2004). This Court adopted the holding in *Point Classics, AG v. Disky GmbH Musik & Video* on November 18, 2003 via *Platinum*, *supra*.

from September 2013 (approximately 153 recordings). Plaintiff received a letter from counsel for SAAR on December 12, 2013, which indicated that SAAR was relying on a third party license for distribution of the Point Classics Catalog.

In March 2014 and again as recent as August 2014, many of the Point Classics recordings that were previously identified to Believe remained available for sale in the United States and across the world despite Plaintiff's takedown demands of September 2013. (*See* Turner Declaration, Doc. No. 22, Exhibit D).

### III. STANDARD OF REVIEW

In adjudicating a Rule 12(b)(2) motion, a court may determine the motion to dismiss via (1) consideration of supporting affidavits, (2) holding an evidentiary hearing, or (3) it may permit discovery. *Word Music, LLC v. Priddis Music, Inc*., No. 3:07cv0502, 2007 WL 3231835 at *4 (M.D. Tenn. Oct. 30, 2007). Plaintiff agrees that it bears the burden of establishing that this Court has jurisdiction over Believe. However, the burden of proof necessary depends on which of the three options the court chooses to apply. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Absent an evidentiary hearing or limited discovery, the plaintiff bears only the "relatively slight" burden of making a "*prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id*. at 1458-59. Because Defendant SAAR appears to dispute Point Classics' chain of title in the Point Classics Catalog, it would be improper to apply the higher standard of proof under the other options, which applies in cases where discovery has taken place. *See Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

Therefore, to the extent that the Court does not outright deny Believe's Motion to Dismiss, this Court should stay its ruling on the motion and allow the parties to conduct jurisdictional discovery if the Court is unable to decide the motion in Plaintiffs' favor at this time

for the same reasons previously articulated in Plaintiff's Opposition to Defendant SAAR's Motion to Dismiss.

## IV. THIS COURT HAS AMPLE AVENUES FOR EXERCISING PERSONAL JURISDICTION OVER BELIEVE

As this Court has previously directed in similar cases, Point Classics respectfully requests that, at a minimum, the parties be required to conduct jurisdictional discovery. Prior to Defendant's filing of this motion, Believe began cooperating with Plaintiff, albeit briefly, by providing a copy of the distribution agreement between SAAR and Believe. A copy of the agreement is attached as **Exhibit A**. Furthermore, Believe agreed to provide royalty accountings, although they have failed to do so, to date (and the amounts alleged in Believe's Memorandum of Law certainly do not come close to matching up with what SAAR has previously provided or with what iTunes has directly reported to Plaintiff). Even without all of the documents requested from Believe, however, there are sufficient facts that, when considered by the Court in the light most favorable to Point Classics (*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)), will allow the Court to exercise personal jurisdiction over Believe. Absent an evidentiary hearing, dismissal is proper only if the facts alleged by Point Classics collectively fail to state a *prima facie* case for jurisdiction. *Id*.

### A. PERSONAL JURISDICTION

A federal court may exercise personal jurisdiction in a diversity case only if such jurisdiction is authorized by the law of the state in which the court sits and is otherwise consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates due process." *Bridgeport*

*Music, Inc. v. Sill N the Water Publishing*, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). Tennessee courts have construed the Tennessee long-arm statute to extend to the limits of due process.[3] *See Bridgeport*, 327 F.3d at 477. Therefore, this Court need only address whether exercising personal jurisdiction over Believe is consistent with federal due process requirements.

The underlying principle behind the due process analysis is that a defendant who is not physically present in the forum must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn*, 324 F.3d at 417 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The United States Supreme Court has distinguished between "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction, depending on the nature of the contacts between the defendant and the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *see also Bridgeport*, 327 F.3d at 477.

### B. GENERAL PERSONAL JURISDICTION

Point Classics does not dispute that this Court lacks general jurisdiction over Believe. Point Classics does not assert that Believe has "continuous and systematic contacts" with Tennessee sufficient to justify general jurisdiction over Believe. *See Aristech Chemical Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

### C. SPECIFIC PERSONAL JURISDICTION

While this Court likely does not have general jurisdiction over Defendant Believe, this Court should exercise specific jurisdiction over Believe based on the facts and Believe's conduct involving its infringing activities, which activities caused damage to Point Classics as a

---

[3] The Tennessee long-arm statute is codified at Tenn. Code Ann. § 20-2-214 as well as § 20-2-223, which includes a provision conveying personal jurisdiction based on conduct.

Tennessee company dating back to at least 2000 when SAAR began its infringing activities, which were supported by Believe and Believe's predecessor-in-interest, MTunes. Point Classics concedes that specific jurisdiction over Believe will exist only if Believe's contacts with Tennessee satisfy the three-part *Mohasco* test. *See Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The *Mohasco* elements are satisfied as a direct result of Believe's licensing agreement with iTunes because the licensing agreement is directly responsible for the infringing actions alleged in Point Classics' Complaint.

### 1.     Defendant Believe has Purposefully Availed Itself to Tennessee.

The first *Mohasco* element requires Point Classics to show that Believe "purposefully availed itself of the privilege of acting in Tennessee or caus[ed] a consequence in Tennessee." *Bridgeport,* 327 F.3d at 478. This requirement is satisfied when the defendant's contacts with Tennessee "proximately result from actions by the defendant . . . that create a substantial connection" with Tennessee, and when the conduct and connection are such that the defendant should "reasonably anticipate being haled into court" in Tennessee. *CompuServe*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-475 (1985)).

First, Believe outright acknowledges that it is a global distributor of music, which includes distribution within the United States. (Hindermeyer Decl., at ¶ 4, Doc. No. 38-2). In attempting to avoid the slippery slope of having offices in the United States, Believe misleads the Court by stating that via the Hindermeyer Declaration that "Believe US is not associated with Believe S.A.S." and that "[a]lthough Believe previously contracted with a single independent marketing consultant in New York, New York, Believe has otherwise never had any employees, representatives or offices in the United States." *Id.* at ¶¶ 3-4. To the contrary, it is clear that Believe, Believe Digital and Believe US are intertwined within the same corporate umbrella.

Specifically, a press release issued on November 9, 2012 via its own website, Believe announced that it was "ecstatic to announce the opening of its new office in New York City…headed by Shane German." The release further acknowledged that the opening of the office was "part of Believe's ever-expanding worldwide network." www.blogbelieve.com/category/believe-news/team-believe/, accessed October 1, 2014, **Exhibit B**. A follow up story was found in other press outlets stating that "Believe Digital, a music distribution company based on France, has opened a New York office in Bushwick [Brooklyn]." www.brownstoner.com/blog/2012/11/french-music-distributor-opens-office-in-bushwick, accessed March 27, 2014, **Exhibit C**. Furthermore, Shane German was hired as Head of Label Relations at Believe Digital for the United States. *See* Shane German LinkedIn profile, attached as **Exhibit D**. Believe even had a US Twitter account and proudly announced that it had moved offices from Brooklyn to Manhattan on May 31, 2013. https://twitter.com/Believe_USA/status/340583269798137856/photo/1, accessed June 6, 2014, **Exhibit E**. Believe certainly held Mr. German out as much more than merely an "independent marketing consultant" and there were clearly at least three other Believe employees within the New York office as seen in the "U.S. Believe Digital team" picture on the Believe website. What is more disturbing is that prior to the commencement of the litigation, Believe's website listed offices in Miami, San Diego, and New York, but all have magically disappeared from the website now the the case is pending. None of those offices were ever registered to do business in any of the states as confirmed by the Secretary of State of each of the three respective States.

Believe relies solely on the self-serving Declaration of Anne Hindermeyer (the "Hindermeyer Declaration") to attempt to defeat the fact that Believe has purposefully availed

itself to the jurisdiction of this Court.[4] Believe also relies heavily on this Court's decision in *Bridgeport*, the facts of which are easily distinguished from the facts of this case. In fact, the *Bridgeport* court distinguished several facts of that case from a prior Sixth Circuit ruling in *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528 (6th Cir. 1993), the facts of which are much more germane to the facts of the instant case. In *Tobin*, the court held that the dismissal of a Dutch manufacturer sued by a Kentucky resident in Kentucky was inappropriate because the manufacturer had purposefully availed itself to the United States market. *Id*. at 543-44. The Dutch manufacturer, Duphar, sought out and negotiated a licensing agreement with Astra, who was to distribute Duphar's product throughout Astra's "territory." *Id.* at 543. The "territory" was defined as "the United States, its territories and possessions, and Puerto Rico." *Id*. As the court correctly noted, Duphar made a deliberate decision to have its product marketed in all fifty states. *Id*. It did not seek a regional distributor or a distributor for specific states. *Id*. at 544. Rather, Duphar sought and obtained a distributor who could market its product throughout the entire United States. *Id*. Interestingly, the court also found that Duphar had done "something more" by keeping control over an essential element of its product – the package insert, which showed, in addition to the other points, that Duphar had purposefully availed itself to the forum state at hand. *Id*. at 543.

The facts of *Tobin* are strikingly similar to the facts of this case, as discussed in more detail below. In the instant case, a now-former Tennessee company (which continues to maintain a financial interest in the outcome of this case) is suing an international licensor and

---

[4] As the court in *CompuServe* noted, if the court chooses not to conduct an evidentiary hearing when dealing with a motion to dismiss, the plaintiff is only required to make out a *prima facie* case for jurisdiction, in which case, not only are the pleadings and declarations to be considered in the light most favorable to the plaintiff, but the court will also not consider or weigh the controverting assertions of the defendant. *CompuServe*, 89 F.3d at 1262. **This rule was adopted to prevent non-resident defendants, such as Believe, from "regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."** *Theunissen*, 935 F.2d at 1459. (emphasis added)

distributor of music. Here, Believe attempts to "pass the buck" to SAAR and/or iTunes by claiming that it never actually sold any music to customers in the United States (this is quite similar to the argument that SAAR made whereby SAAR attempted to lay the blame at the feet of Believe). However, this argument should not be tolerated. As Believe acknowledges, it sought out and presumably negotiated a licensing agreement with Apple for iTunes distribution (the "iTunes Agreement") (Hindermeyer Decl. ¶ 5).

          **a.**    **Territory of iTunes Agreement**. Every iTunes agreement contains a "territory" for the distribution of the sound recordings. Typically, licensors have the ability to select which country or countries its desires to have its music distributed to and this information is readily available within the actual document. It would seem that by virtue of Ms. Hindermeyer's statements, the territory of the iTunes/Believe agreement is defined as "the entire world." However, one must read further into the agreement to get a better understanding of the territory encompassed in the agreement.

First, there is a high likelihood that, based on other iTunes agreements, that Believe had the right to exclude specific geographic territories from the definition. Like the defendant in *Tobin*, Believe made a deliberate decision to ***include*** the United States in the marketing and distribution of its sound recordings via iTunes. As Hindermeyer's Declaration states, Believe is not merely a regional distributor, but rather, it is one with the capabilities of marketing music throughout the world, which includes the United States. (Hindermeyer Decl. ¶ 5).

Next, fees and payments pertaining to those downloads taking place within the United States are paid to Believe by iTunes. Based on the very limited amount of accounting that Plaintiff has obtained from iTunes (and only on a very select number of recordings), over $6,000

in royalties have been paid by iTunes to Believe. The iTunes accounting statements are broken out by territory and sales have certainly occurred within the United States.[5]

Third, by entering into the iTunes agreement, Believe presumably agreed to the jurisdiction of the United States.[6] Believe does not assert that it would be "substantially burdened" if compelled to litigate in Tennessee. In fact, it simply argues that it should not be forced to participate because the "sole connection Tennessee has" is that the catalog was "apparently once owned...by a Tennessee entity." (Doc. No. 38-1, ¶ 6). Believe goes on to assert in some fashion that jurisdiction should not be found because the copyright registration are of compositions "originating overseas" that were "batched-registered". *Id.* These are not arguments against personal jurisdiction. The registrations are fully authorized by the Library of Congress and have been repeatedly upheld as valid. It makes no difference where the recordings originated. The fact remains that when the infringing activities began, a Tennessee company was in control of the catalog, and a Tennessee company continues to have an interest today.

**b.     Benefit of United States Market.** The reasoning of *Mott v. Schelling & Co.*, No. 91-1540, 1992 WL 116014 (West. Dist. Mich. May 29, 1992) applies directly to the instant case.[7] The *Mott* court exercised jurisdiction over an Australian designer and manufacturer (Schelling) that caused injury to a plaintiff by way of Schelling's product. *Id.*

---

[5] Believe attempts to greatly minimize the fact that the Point Classics Catalog was held by a Tennessee company for nearly fifteen years. Believe further attempts to side-step the fact that the Turner Declaration supports the issue of sales occurring in Tennessee.

[6] Without a copy of the Believe/iTunes Agreement, it is impossible to know the venue that controls that contract; however, it can be presumed that, at a minimum, California law applies since California is where Apple is located. To that end, Plaintiff submits that it is no less inconvenient for Believe to partake in the instant litigation in Tennessee than it would be for Believe to partake in litigation in California, where it has willingly availed itself via the iTunes Agreement.

[7] Though *Mott* is an unpublished opinion, this Court recently noted in *Young v. Affilatrici*, No. 3:05-0974, 2007 WL 626332 (M.D. Tenn. Feb. 23, 2007) that *Mott* was discussed "extensively by the Sixth Circuit" in *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214 at 220-21 (6th Cir. 2006), and *Tobin*, 993 F.2d at 544, and quoted with approval in each instance.

at *6.  The court pointed out that Schelling knew that its products were being sold in the United States.  *Id*. at *5.  The foreign company benefited from numerous domestic sales over many years.  *Id*. at *6.  Likewise, Believe knew that the sound recordings were being sold within the United States and would continue to be sold pursuant to the SAAR license and the iTunes Agreement.  Presumably, Believe received monthly accounting statements from iTunes, which reflected sales within the United States.  These statements would show which recordings were sold, for what price they were sold, and from which territory the sale(s) occurred.  Just like with SAAR, it is a farce for Believe to imply that it did not enter into the iTunes Agreement with the express intention to cause sales of the sound recordings in the United States, including Tennessee.[8]  To try to distinguish between Believe's right to distribute and obligation to distribute the sound recordings undermines the precise purpose of licensing agreements such as the iTunes Agreement and Believe's own agreement with SAAR.  The court's firm statement that "[D]ue process does not require us to allow Schelling to exploit this country's vast, rich markets, and at the same time, avoid the jurisdiction of our courts" is directly applicable to the facts of this case.  *Id*. at *6.  Like argued in its opposition to SAAR's motion to dismiss, Plaintiff asserts that Believe should not be allowed to conduct business in the United States but then get away with illegal activity claiming that it is not "licensed" to do business in the United States.

      Believe knowingly and intentionally entered into a licensing agreement with iTunes for the sole purpose of exploiting markets in the United States, including Tennessee, for the benefit of its clients such as SAAR.  As recognized in this Circuit, a defendant such as Believe cannot

---

[8] Point Classics maintains that dismissal of Believe on this point alone would be premature when following the logic of <u>Bridgeport</u>, in which the court followed *Tobin* to find purposeful availment by the existence of a nationwide distribution agreement, even though the agreement did not explicitly <u>require</u> nationwide distribution.  Subsequent deposition testimony in both cases revealed an understanding that the products would, in fact, be distributed in all fifty states.  *See Tobin*, 993 F.2d at 544, and *Bridgeport*, 327 F.3d at 484.

expect to "rely solely on the use of an independent distributor to insulate it from suit." *See Poyner v. Erma Werke GmbH*, 618 F.2d 1186, 1190 (6th Cir. 1980), *followed by Tobin* and *Mott*.[9] As this Circuit has stated numerous times before, "[p]urposeful availment by the defendant of the privilege of acting in, or causing consequences in, the forum state, is the *sine qua non* of *in personam* jurisdiction." *Tobin*, 993 F.2d at 544, *citing to Theunissen*, 935 F.2d at 1454. Believe is attempting to argue exactly what the defendant in *Tobin* argued, which is that it has done nothing to purposefully avail itself of the Tennessee market as distinguished from any other state. Believe does not, at any point, dispute the fact that it is distributing recordings to the United States. Using the *Tobin* analysis, this Court should arrive at the conclusion that "[I]f we were to accept defendant's argument on this point, a foreign manufacturer could insulate itself from liability in each of the fifty states simply by using an independent national distributor to market its products, a result we specifically rejected in *Poyner*." *Tobin*, 993 F.2d at 544. X5 should not be able to use its national licensing agreement with iTunes as a shield from its blatantly infringing activities. Taking it a step further, as the Sixth Circuit recognized in *Palnik v. Westlake Entm't, Inc.*, 344 Fed. Appx. 249, 2009 U.S. App. LEXIS 19417 (6th Cir., August 31, 2009), the court should look at the "distribution relationship in determining whether a [foreign party] has sufficient connection to a forum state for jurisdiction…." *Id.* at 251, *4. Citing to the *Bridgeport* case, the Sixth Circuit pointed out that it affirmed dismissal against one defendance but revered as to the other. *Id.* "The first defendant was 'merely aware' of the fact of national distribution, but the choice to distribute was 'pretty much out of [its] hands." *Id., citing to Bridgeport*, 327 F.3d at 480. However, the other defendant, which is much more akin to

---

[9] Again, it is interesting to note that SAAR argued that liability should rest with Believe since Believe was responsible for distributing the recordings to the United States, much like Believe attempts to point the finger at iTunes. At some point, one or both of these parties must take responsibility for their own actions.

Believe in the instant case, "sought nationwide distribution by contracting with a distributor for sales 'throughout the United States, its territories, commonwealth, possessions'…." *Id. at 483*. As the court pointed out, this type of relationship "supports a prima facie…finding of jurisdiction under *Asahi*." *Id.* Just like with SAAR, Believe could make the very same jurisdictional argument in each and every U.S. District Court simply to avoid being held responsible by a U.S. court for its infringing activities. Such an outcome would have a massive chilling effect on U.S. music companies that are attempting to protect themselves from infringers like Believe and SAAR.

2. **The Copyright Infringement Action Arises from Believe's Activities in Tennessee.**

The second *Mohasco* factor requires that the cause of action arises from the defendant's activities within the forum state. *Mohasco*, 401 F.2d at 381. As noted above, Point Classics asserts that this information will be uncovered during Point Classics' discovery of Believe's full sales reports. Point Classics maintains that, like the plaintiff in *Tobin*, its cause of action for copyright infringement arises as a result of Believe causing the infringed sound recordings to be marketed, distributed and sold in Tennessee. *See Tobin*, 993 F.2d at 544. It is premature for Believe to demand that Point Classics present proof regarding Believe's receipts from sales in the United States, including Tennessee, particularly when Believe has refused Point Classics' requests for full and complete information.

3. **Jurisdiction Over Believe is Reasonable and Due Process Requires It**.

The third and final factor in *Mohasco* requires courts to evaluate whether the exercise of jurisdiction over the defendant is reasonable so as not to offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). As this Circuit

has stated, once the first two criteria of the *Mohasco* test are satisfied, "an inference arises that the third – fairness – is also present." *Theunissen*, 935 F.2d at 1461. Several factors are considered when evaluating reasonableness, such as (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state; and (3) the plaintiff's interest in obtaining convenient and effective relief. *Tobin*, F.2d at 545, *citing World Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

**a. Believe has presumably agreed to jurisdiction in the United States**.
The burden of Believe litigating this case in Tennessee is no greater than Believe's requirement and agreement to partake in arbitration or litigation in whichever state controls under the iTunes Agreement. More important is Believe's apparent scheme to mislead the public by representing to the world that it has or had corporate offices in the United States. Hindermeyer's Declaration states that "[a]lthough Believe previously contracted with a single independent marketing consultant in New York, New York, Believe has otherwise never had any employees, representatives or offices in the United States." (Hindermeyer Decl. ¶ 4). However, prior to the initiation of this lawsuit, Believe expressly represented to the public that it had a corporate office in Brooklyn and Manhattan, along with other offices in Miami and San Diego. Furthermore, Believe's own website announced the "Believe Digital team" in its New York offices, the hiring of Shane German (which makes no mention of him being merely an "independent marketing consultant") and the "ever-expanding worldwide network" of Believe. Only after Point Classics filed this lawsuit did Believe mysteriously remove from its website any mention of its offices in New York City, San Diego and Miami. Apparently Believe had hoped to reap the benefits of representing that it had multiple corporate offices worldwide, but did not want to incur the liabilities that come along with such representations. For an unknown period of time leading up

to the initiation of this lawsuit, Believe held itself out to the public as having offices and doing business within the United States. Believe has also presumably entered into a contract that is governed by and construed in accordance with the laws of the United States (i.e., the iTunes Agreement). Allowing Believe to hold itself out to the public as having offices within the United Stated *and* agreeing to be bound by United States law, but then allowing Believe to hide behind its foreign shield, would have a chilling effect on the judicial system of this nation. Allowing Believe to evade this Court's jurisdiction would be directly contrary to what this Circuit has previously held in *Poyner* and *Mott*. *See Poyner*, 618 F.2d 1186 (6th Cir. 1980) and *Mott,* 1992 WL 116014 at *6. Additionally, Point Classics has not had the benefit of discovery to learn the identity of other parties with whom Believe has entered into similar sub-licensing agreements in which Believe agreed to the laws and jurisdiction of the United States. Point Classics plans to obtain this information during the discovery process.

**b. Tennessee has a high interest in this case, including Point Classics' interest in convenient and effective relief.** Exercise of jurisdiction over X5 is reasonable in this case because the interests of Tennessee and Point Classics are quite high. A Tennessee company has been injured as a direct result of Believe's infringing actions. (Long Decl. ¶ 34, Doc. No. 22-3). Believe, like SAAR, attempts to argue a similarity between this case and *Asahi* as a reason for dismissal. However, much like the court held in *Tobin*, the *Asahi* case is inapposite to this case. The claim presented in *Asahi* was a third-party action for indemnification; the claim involving the California resident had already been settled. *See Asahi Metal Industry Co., Ltd. v. Superior Court of CA*, 480 U.S. 102, 114 (1987). The instant case involves a ***direct action*** between Point Classics, which includes a Tennessee company as a result of the infringing activities dating back to at least 2000, and Believe, a copyright infringement

aggregator. Tennessee's interest, whether it be the injury to Point Classics or overall protection of intellectual property, remains significant.

Additionally, Believe placed the infringed sound recordings directly into the United States market, including Tennessee, albeit via iTunes. The distribution of the sound recordings has injured Point Classics, which includes a prior Tennessee company, which will be denied relief if it cannot obtain such relief "conveniently and effectively" from Believe. This theory was directly followed by this Circuit in *Mott, Tobin*, and *Poyner*. *See Mott*, 1992 WL 116014 at *6; *Tobin*, 993 F.2d at 545; and *Poyner*, 618 F.2d at 1192. Simply put, as this Circuit has repeatedly stated, a foreign entity such as Believe cannot insulate itself from liability for its wrongdoing against the forum state by using a national distributor such as iTunes and then claim that it is not present within the jurisdiction and is not subject to the jurisdiction of courts within that state.

## CONCLUSION

Believe has directly caused injury to a Tennessee company as a result of its licensing of sound recordings to iTunes. For the many reasons set forth above, Point Classics respectfully requests that this Court deny Believe's Motion to Dismiss and exercise jurisdiction over Believe.

Dated: October 2, 2014           Respectfully submitted,

           **KELLER TURNER RUTH**
           **ANDREWS GHANEM & HELLER, PLLC**


           By:   /s/ Jason L. Turner_____
                 Jason L. Turner
                 Jennifer S. Ghanem
                 700 12th Avenue South, Suite 302
                 Nashville, TN 37203
                 (615) 244-7600 (phone)
                 (855) 344-7600 (fax)
                 Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on October 2, 2014, a true and correct copy of the foregoing document has been served upon those parties registered through the Court's ECF system if available, or by placing same in the U.S. Mail, to the following persons or parties:

Samuel D. Lipshie
Patricia Head Moskal
Jeffrey L. Allen
Bradley Arant Boult Cummings, LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Via Email: slipshie@babc.com
pmoskal@babc.com
jallen@babc.com

David M. Given
50 California Street, Suite 3240
San Francisco, CA 94111
dmg@phillaw.com

John J. Griffin, Jr.
Michael A. Johnson
Kay Griffin Enkema & Colbert, PLLC
222 Second Ave. N, Suite 340M
Nashville, TN 37201

Henry Hadaway Organisation, Ltd.
HHO Licensing Limited
Henry Hadaway
Lawrence.Abramson@keystonelaw.co.uk

                                                                          /s/ *Jason L. Turner*
                                                                          Jason L. Turner