UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ONE MEDIA IP LIMITED, as successor-in-interest to TELOS HOLDINGS, INC., d/b/a Point Classics, )<br>)<br>)<br>) | |
| Plaintiff, ) | Case No. 3:14-cv-0957 |
| ) | Judge Aleta A. Trauger |
| v. )<br>) | |
| S.A.A.R. SrL, BELIEVE SAS d/b/a BELIEVE DIGITAL GROUP and BELIEVE US, HENRY HADAWAY ORGANISATION, LTD., HHO LICENSING LIMITED, HENRY HADAWAY, And DOES 1-10, inclusive, )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

Pending before the court are two Rule 12 motions. The first is a Motion to Dismiss for Lack of Jurisdiction filed by defendant S.A.A.R. SrL ("SAAR") (Docket No. 1), to which the plaintiff has filed a Response in opposition (Docket No. 22), and SAAR has filed a Reply (Docket No. 28). The second is a Motion to Dismiss filed by defendant Believe S.A.S. (Docket No. 38), to which the plaintiff has filed a Response in opposition (Docket No. 45), Believe S.A.S. has filed a Reply (Docket No. 55), and the plaintiff has filed a Supplemental Response (Docket No. 63). For the reasons stated herein, the court will permit the parties to conduct discovery before the court rules on the motions.

## BACKGROUND

This case concerns alleged infringement of certain copyright interests held by plaintiff One Media IP Limited d/b/a Point Classics ("One Media") in a set of classical music recordings, which the court will refer to as the "Catalog."

1

One Media is a corporation organized under the laws of the United Kingdom. Through a series of assignments, corporate mergers, and the like, chain of title to One Media's copyright interest in the Catalog appears to trace back to the 1980s.[1] Briefly, from March 31, 1992 through June 23, 2000, several different European-based companies held title to the Catalog, and at least one of these entities licensed certain interests in the Catalog to "Henry Hadaway Organisation Limited" ("HHO #1"). HHO #1 is a British company with a principal place of business in England, and it is one of multiple companies affiliated with a British individual named Henry Hadaway. That license agreement allegedly expired at some point before June 2000.

In June 2000, title to the Catalog shifted to a series of United States-based companies affiliated with an American individual named Jim Long. On June 23, 2000, Long's company "OneMusic Corporation," whose state of incorporation and principal place of business the plaintiff has not disclosed, acquired the catalog. On November 1, 2000, OneMusic assigned its interest in the Catalog to Point Classics, LLC ("Point Classics LLC"), a Tennessee company that Long owned and managed. Point Classics LLC obtained Certificates of Registration from the United States Copyright Office that reflect copyrights in the compositions within the Catalog.

On August 18, 2006, Point Classics LLC entered into a three-year licensing agreement with HHO #1 (the "PC/HHO #1 License") that expressly forbade HHO #1 from granting sublicenses related to the Catalog. On December 31, 2007 – during the term of the PC/HHO #1 License – Point Classics LLC assigned its interests to Telos Holdings, Inc., a Texas corporation whose principal place of business the plaintiff has not disclosed. On July 17, 2009, Telos

---

[1] One Media submitted an affidavit from Jim Long, the owner or manager of several entities that held interests in the Catalog from 2000 through 2014. The Long Affidavit purports to delineate the chain of title to the Catalog. (Docket No. 22, Ex. C.)

2

Holdings allegedly informed Hadaway that, effective August 18, 2009 (the last date of the three-year term), the licensing agreement with HHO #1 would be terminated. Hadaway allegedly confirmed the termination of the agreement in writing.

Notwithstanding Hadaway's promise, one or more entities affiliated with him continued license and sublicense the Catalog. In August 2013 (about four years after the PC/HHO #1 License had been terminated), Telos Holdings discovered that portions of the Catalog had been illegally licensed to SAAR, which had in turn (1) contracted with Believe S.A.S. for worldwide "digital distribution" of the Catalog's compositions through music purchase websites such as iTunes,[2] and (2) sublicensed interests in the catalog to two other European companies. SAAR claimed authority to exploit the works under a licensing agreement with HHO Licensing Limited ("HHO #2"), another British company affiliated with Hadaway. Neither Telos Holdings nor its predecessors-in-interest had entered into an operative license with Hadaway after the HHO #1/PC License had expired in August 2009.

Thus, the plaintiff alleges that (1) HHO #2 illegally purported to sub-license interests in the Catalog to SAAR, in return for the remittance of fees from SAAR related to each instance of exploitation of the Catalog, (2) SAAR in turn granted illegal sub-licenses to Believe S.A.S. and two other companies; and (3) Believe S.A.S. illegally contracted with third parties to sell the works to online consumers worldwide. One Media also alleges that, notwithstanding several cease and desist letters from Telos Holdings to SAAR and Believe S.A.S., portions of the

---

[2] The FAC alleges that Believe S.A.S. is a "digital music aggregator" that contracts with third parties to make songs available to consumers for sale and download on those third parties' web sites.

3

Catalog continue to be offered for sale online in both the United States and United Kingdom iTunes stores.

On April 8, 2014, Telos Holdings filed a Complaint against SAAR and "Believe Digital," alleging federal copyright infringement claims, with respect to which it demanded declaratory and injunctive relief. (Docket No. 1.) On July 1, 2014, Telos Holdings purportedly sold its interests in the Catalog to One Media IP Limited ("One Media"), a British company that does not appear to be affiliated with Jim Long. On July 30, 2014, One Media filed a First Amended Complaint ("FAC") that (1) substitutes "One Media IP Limited as successor-in-interest to Telos Holdings, Inc." as the plaintiff; (2) restyles the "Believe" defendant as "Believe SAS d/b/a Believe Digital Group and Believe US"; and (3) adds as defendants Hadaway, HHO #1, and HHO #2 (collectively, the "Hadaway Entities"), as well as unnamed "John Doe" Hadaway-affiliated entities.[3]

As the court understands the chain of title to the Catalog, the plaintiff in this case is "One Media IP Limited," not Telos Holdings or Point Classics LLC. Perhaps in an effort to emphasize a past Tennessee connection to the underlying facts, One Media's representations concerning the relationship between Point Classics LLC and this lawsuit appear to conflate One Media (a British company) with Telos Holdings (a Texas company with no apparent connection to Tennessee) and Point Classics LLC (a Tennessee company whose principal place of business the plaintiff has not disclosed). The plaintiff's representations concerning Point Classics LLC are also arguably inconsistent with public filings on the Tennessee Secretary of State's website. For example, even though the company filed Articles of Termination in 2009, the plaintiff claims

---

[3] The FAC also adds a claim for unfair competition and includes a request for an accounting.

4

that Point Classics LLC continued to conduct "wind down operations" through 2014 and that Point Classics LLC somehow "retains an interest" in this lawsuit.[4]

As for Believe S.A.S., Believe's in-house counsel (1) avers that Believe S.A.S. does not do business in the United States and (2) avers, somewhat cryptically, that Believe S.A.S. is "not associated with" Believe US. The plaintiff has introduced materials issued by a "Believe" entity that seem to contradict Believe S.A.S.'s position, such as "Believe" social media posts touting the opening of a New York office. The court suspects that Believe S.A.S. may be drawing a distinction between itself and a United States affiliate, although the nature of the relationship between those two entities, if any, is unclear.

SAAR has filed a Motion to Dismiss under Rule 12(b)(2), arguing that the court lacks personal jurisdiction over it. Both SAAR and the plaintiff have filed materials outside the FAC with respect to the motion. Believe S.A.S. has filed a Motion to Dismiss under Rule 12(b)(6), arguing that the court lacks personal jurisdiction over it. As with SAAR's motion, Believe S.A.S. and the plaintiff have filed materials outside the pleadings with respect to the motion. Therefore, although Believe's motion is styled as filed under Rule 12(b)(6), the court construes it as filed under Rule 12(b)(2).

The plaintiff has requested that, if the court is inclined to rule against it on the existing record, the court allow for discovery before ruling on the motions.

In contrast to SAAR and Believe, the Hadaway Entities failed to respond to the FAC. On October 21, 2014, upon motion, the Clerk entered a Notice of Default against the Hadaway

---

[4] In future submissions to the court, the plaintiff should be attentive to these distinctions, which are potentially relevant to the court's jurisdictional analysis.

Entities. (Docket No. 56.) On October 7, 2014, the case was reassigned from Judge Kevin A. Sharp to this judge. (Docket No. 48.)[5]

## RULE 12(B)(2) STANDARD

The Sixth Circuit has set forth a well-defined procedural design aimed at guiding district courts in their disposal of Fed. R. Civ. P. 12(b)(2) motions for lack of personal jurisdiction. *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998). One Media, as the party seeking assertion of personal jurisdiction, bears the burden of showing that personal jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *see also CompuServe, Inc.*, *v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). To do so, a plaintiff may not simply rely on the allegations set forth in the complaint but must, by affidavit or otherwise, set forth specific facts showing the existence of jurisdiction. *Theunissen*, 935 F.2d at 1458.

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion on the basis of the affidavits submitted by the parties, (2) permit discovery in aid of deciding the motion, or (3) conduct an evidentiary hearing on the merits of the motion to resolve any apparent factual questions. *See Dean*, 134 F.3d at 1272. It is in the court's discretion, based on the circumstances of the case, which path to choose. *Id*. If the court chooses not to conduct an evidentiary hearing or to permit discovery, the plaintiff bears only the "relatively slight" burden of making a "*prima facie* showing that personal jurisdiction exists[.]" *Theunissen*, 935 F.2d at 1458-59. The court construes the pleadings and affidavits in the light most favorable to the plaintiff and, "to prevent non-resident defendants

---

[5] Before reassignment, Judge Sharp had issued an Initial Case Management Order. (Docket No. 39.) Following reassignment, the court granted the defendants' request to stay discovery and all other deadlines set forth in the ICMO, pending resolution of the defendants' jurisdictional challenges. (Docket No. 58.)

from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts," the court does not weigh the controverting assertions of the party seeking dismissal. *Id.* at 1459.

## ANALYSIS

The plaintiff concedes that the court lacks general personal jurisdiction over SAAR and Believe S.A.S. The parties agree that the motion turns on whether the court has specific personal jurisdiction over those defendants, that the federal and Tennessee minimum contacts analysis merge into a federal due process analysis because Tennessee's Long-Arm Statute reaches to federal constitutional limits, and that the court must therefore apply the three-part *Mohasco* test set forth by the Sixth Circuit. *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The *Mohasco* test has the following elements:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable.

*Id.* Although all three elements must be satisfied, it is the "purposeful availment" element of the test that is the *sine qua non* of specific personal jurisdiction. *Id.* at 381-82.

With respect to purposeful availment, the Sixth Circuit has adopted the "stream of commerce 'plus' approach," under which "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum State." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 479-80 (quoting *Asahi Metal Indus. Co., Ltd., v. Superior Court*, 480 U.S. 102 (1987) (O'Connor, J.) (plurality op.)). As described in *Bridgeport*:

> Purposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities. The purposeful availment requirement is satisfied when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there. The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state. If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant.

327 F.3d at 478-79 (internal citations, quotations, and brackets omitted).

Here, the defendants argue that they did not purposely avail themselves of acting in Tennessee or causing consequences in Tennessee. SAAR argues that the fact that it entered into an agreement with Believe S.A.S. for "worldwide" distribution is, standing alone, insufficient to constitute purposeful availment in Tennessee. The contract was executed in Europe and states that it is to be governed by French law. SAAR also contends that it is, at a minimum, two steps removed from any activity directed to Tennessee: it entered into a sub-license agreement with Believe S.A.S., which in turn contracted with retail music distribution sites such as iTunes, which in turn transacted with consumers for online purchases and downloads. The only evidence in the record of sales in Tennessee is the purchase of digital sound recordings by the plaintiff's counsel while he was present in Tennessee. Finally, SAAR's Sole Manager, Boris Julius Guertler, avers that HHO #1 granted SAAR a non-exclusive right to use the Catalog in Italy and to manufacture, sell, and distribute records of the licensed recordings in Italy and to export records of these licensed recordings only "to other countries within the European Union." (Guertler Affidavit ¶ 12.) As the plaintiff points out, Guertler's Affidavit appears to conflict

8

with the terms of the licensing agreement between SAAR and Believe S.A.S., which does not contain any terms limiting its geographic scope.[6]

Believe S.A.S. similarly contends that it did not purposefully avail itself of the privilege of conducting business in Tennessee. It denies that it ever operated in the United States. It also represents that its records reflect only 505 euros in *worldwide* commerce relating to the allegedly infringed works and that it cannot determine whether any of those sales relate to Tennessee-based transactions. The plaintiff disputes some of Believe S.A.S.'s contentions, arguing that Believe S.A.S. has publicly represented that it operated in the United States in multiple locations and that it actually can identify the source of purchases by state.[7] The plaintiff also contends that iTunes records produced to the plaintiff demonstrate substantially more sales of the infringing works than Believe S.A.S. claims.

---

[6] SAAR did not produce a copy of this agreement to plaintiff in response to informal pre-litigation requests, nor did it produce the agreement in this litigation. However, after SAAR filed its Memorandum and Reply concerning its own Rule 12(b)(2) motion, Believe S.A.S. produced a copy of the agreement in support of Believe S.A.S.'s motion.

[7] Among other factual submissions, the plaintiff's response attaches a press release (purportedly from Believe S.A.S. itself) announcing that (1) Believe S.A.S. was, on November 9, 2012, "ecstatic to announce the opening of its new office in New York City . . . headed by Shane German[,]" as part of Believe's "ever-expanding worldwide network." The plaintiff has also filed a copy of a news article stating that "Believe Digital, a music distribution company based in France, has opened a New York office in Bushwick [Brooklyn]." The plaintiff also filed a printout of Shane German's LinkedIn profile, which indicates that German is "Head of Label Relations, US at Believe Digital." The plaintiff also has filed a May 31, 2013 tweet from Believe Digital US, which states, with an accompanying photo, that "[w]e are now located in Manhattan. Farewell #Bushwick." The plaintiff represents to the court (without screenshots) that Believe S.A.S's website previously listed offices in Miami, San Diego, and New York but that references to those offices disappeared from the website after the plaintiff commenced this litigation.

9

Based on the existing record, the court is skeptical that, relative to Tennessee, the purposeful availment element is satisfied relative to either defendant under the "stream of commerce 'plus'" standard. Also, in terms of whether an exercise of jurisdiction in this case would be reasonable, the connections between this case and Tennessee seem to be highly attenuated. In its current posture, a British company is suing a French company, two British companies and a British individual, and an Italian company, some of whom are defending themselves based on the terms of agreements executed in Europe and governed by the laws of European countries.[8] Moreover, the plaintiff, One Media, is two transactions removed from the only company with a Tennessee connection to this lawsuit. Also, it is not clear that any actionable infringement occurred before December 31, 2007, when Point Classics LLC assigned its interest in the Catalog to Telos Holdings.

At the same time, the court recognizes that the plaintiff's understanding of the defendants' operations and potential connections to the United States and Tennessee markets is limited because of the lack of discovery. If the plaintiff's allegations and Long's affidavit are correct, SAAR and the defendants have been illegally licensing and marketing the plaintiff's recordings for years and, even after being placed on notice of the illegal activity, the defendants have failed to comply (at least in part) with reasonable requests from the plaintiff to cease their illegal behavior. In terms of factual disputes, the court is concerned that the representations in the Guertler Affidavit about purported geographic limitations on its licensing agreement with

---

[8] It is not clear from the record whether Believe S.A.S. or an affiliate contracted with United States entities or otherwise contracted to subject themselves to personal jurisdiction in certain United States or state courts. The plaintiff contends, without evidentiary support, that iTunes contracts generally included a choice-of-law or forum selection clause relating to one or more states within the United States.

10

HHO #2 – which agreement has not been produced – are not reflected in its sub-licensing agreement with Believe S.A.S. Also, the corporate and business relationships between Believe S.A.S. and a potential United States affiliate are unclear, making it difficult to determine whether Believe S.A.S.'s representations about its lack of activity in United States markets are true. It is also not clear whether Believe S.A.S. or a corporate affiliate contracted with United States entities or otherwise entered into contracts providing for jurisdiction within the United States with respect to sales of the Catalog. The court also understands the plaintiff's position that the defendants are (at least in the plaintiff's opinion) making items available for sale in the United States while, at the same time, essentially taking the position that they cannot be sued anywhere in the United States. More generally, it appears that the defendants violated the plaintiff's copyright interest in the Catalog, and the main issue is simply what forum (domestic or foreign) has jurisdiction to hold the defendants to account.

Although it a close call, the court will permit the parties to conduct discovery regarding the issue of specific jurisdiction. Although it may be that resolution of the factual issues noted in this opinion turn out to be immaterial, the court finds that, under the circumstances presented, it would be unfair to dismiss the case without providing the plaintiff an opportunity to probe the defendants' factual representations. Furthermore, it would be helpful to the court to have a better understanding of the chain of title to the Catalog (including the precise residency of each of the Long-affiliated entities in that chain of title) and to have a clear picture as to the timing and nature of Point Classics LLC's interest in the Catalog and its purported interest in this lawsuit.

## CONCLUSION

For the reasons stated herein, the stay of discovery is **LIFTED** so that the parties may engage in discovery relevant to specific personal jurisdiction only for ninety (90) days from the

entry of this Order. Within twenty (20) days) following the period of discovery, the parties may file supplemental briefs with regard to the pending jurisdictional motions.

It is so **ORDERED**.

Enter this 23rd day of January 2015.

_____
ALETA A. TRAUGER
United States District Judge

12