UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ONE MEDIA IP LIMITED, as successor-in-interest to TELOS HOLDINGS, INC. d/b/a POINT CLASSICS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:14-cv-0957 |
| S.A.A.R. SrL, BELIEVE SAS d/b/a BELIEVE DIGITAL GROUP and BELIEVE US, HENRY HADAWAY ORGANISATION, LTD., HHO LICENSING LIMITED, HENRY HADAWAY, and DOES 1-10, inclusive, | ) ) ) ) ) ) ) | District Judge Aleta A. Trauger |
| Defendants. | ) | |

**DEFENDANT S.A.A.R. SrL'S REPLY TO
PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS BELIEVE'S AND
SAAR'S MOTION TO DISMISS AND PLAINTIFF'S CROSS MOTION IN THE
ALTERNATIVE TO TRANSFER VENUE**

Pursuant to Local Rule 7.01 and the Court's Order dated April 7, 2015 (Dkt. 67), Defendant S.A.A.R. SrL ("SAAR") respectfully submits this Reply to Plaintiff's Supplemental Response to Defendants Believe's and SAAR's Motion to Dismiss and Plaintiff's Cross Motion in the Alternative to Transfer Venue (Dkt. 68). For the reasons discussed below, SAAR's Motion to Dismiss (Dkt. 19) should be granted.[1]

---

[1] SAAR fully incorporates herein by reference its Memorandum of Law in Support of Motion to Dismiss (Dkt. 20) and its Reply to Plaintiff's Response in Opposition to Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 28). SAAR also adopts the arguments for dismissal contained in Defendant Believe's Supplemental Memorandum of Law in Support of Motion to Dismiss (Dkt. 69).

# ARGUMENT

## SAAR'S MOTION TO DISMISS FOR LACK OF
## PERSONAL JURISDICTION SHOULD BE GRANTED

Plaintiff is in no better position than it was in approximately four months ago when the Court ordered that, "[a]lthough it [is] a close call, the court will permit the parties to conduct discovery regarding the issue of specific jurisdiction." (Mem. & Order at 11, Dkt. 65.) Though Plaintiff attempted to skirt that limited order by engaging in merits-based discovery, now that the limited jurisdictional discovery period is over, Plaintiff is still unable to prove that this Court has personal jurisdiction over SAAR. The arguments raised in Plaintiff's Supplemental Response (Dkt. 68) are without merit and the case law cited therein is clearly distinguishable from the instant case. In short, Plaintiff has <u>not</u> proven that SAAR has "purposefully avail[ed]" itself of the privilege of acting in Tennessee, that Plaintiff's cause of action against SAAR arises from SAAR's activities in Tennessee (which are nonexistent), and that SAAR's activities have a substantial enough connection with Tennessee to make the exercise of personal jurisdiction over SAAR reasonable. *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). As such, SAAR's Motion to Dismiss should be granted.

    **A.** **SAAR Has Not Purposefully Availed Itself of the Privilege of Acting in Tennessee.**

With respect to purposeful availment, the only new arguments raised by Plaintiff in its Supplemental Response relate to SAAR's website (Dkt. 68, pp. 7-8). Plaintiff asserts that because SAAR advertises artists on its homepage, directs users to third-party websites where such artists' sound recordings can be purchased, and allows users to search an online catalog and request licenses for sound recordings directly from SAAR, that somehow means that SAAR has "purposefully availed" itself of the privilege of acting in the State of Tennessee. (*Id.*) These arguments do nothing to further Plaintiff's misguided and desperate attempts to keep this case

alive.  Plaintiff cites four cases to support these arguments (three of which are relegated to footnotes, clearly because Plaintiff did not find them important or on-point enough to discuss them in the main text of their Supplemental Response): (1) *Mor-Dall Enters. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874 (W.D. Mich. 2014); (2) *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472 (6th Cir. 2003); (3) *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161 (D. Conn. 1996); and (4) *EDIAS Software Int'l v. Basis Int'l*, 947 F. Supp. 413 (D. Ariz. 1996).  All four of these cases are clearly distinguishable, as discussed below.

First, in *Mor-Dall*, a trademark infringement and unfair competition case, a brewer of craft beers in Michigan, doing business as "DARK HORSE BREWING COMPANY," filed suit against a producer of small-batch spirits in Kansas for using the marks "DARK HORSE" and "DARK HORSE DISTILLERY."  *Mor-Dall Enters.*, 16 F. Supp. 3d at 876.  After the defendant filed a Rule 12(b)(2) motion to dismiss, the plaintiff argued in response that personal jurisdiction was proper because the defendant operated an interactive website that solicited Michigan residents to order and purchase goods and services.  *Id.* at 877.  In discussing personal jurisdiction with respect to interactive websites (and relying on the Sixth Circuit's analysis in *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002)), the *Mor-Dall* court explained:

> "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals ***specifically intended interaction*** with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (adopting to "Zippo sliding-scale" for evaluating claims of personal jurisdiction based on a defendant's website)).  The sliding scale ranges from "one end of the spectrum . . . where a defendant clearly does business over the Internet," *Zippo*, 952 F. Supp. at 1124, to the "opposite end . . . where a defendant has simply posted information on an Internet [website] which is accessible to users in foreign jurisdictions."  *Id.*  In the first instance, "personal jurisdiction is proper," while in the second, the contact with the forum state "is not grounds for the exercise of personal jurisdiction."  *Id.*  In the middle lie "interactive [websites] where a user can exchange information with the host computer.  In these cases, the exercise of

jurisdiction is determined by ***examining the level of interactivity and commercial nature of the exchange of information that occurs*** on the [website]." *Id.*

*Mor-Dall Enters.*, 16 F. Supp. 3d at 877-78 (emphasis added).

In *Mor-Dall*, it is important to analyze the nature of the defendant's website and the specific facts of the case in order to understand why the court ultimately found personal jurisdiction. There, the only product available for purchase was the allegedly infringing "DARK HORSE" spirits. *Id.* at 878. Users were required to click a button to confirm their age, click the text "*online by clicking here*" (which sent users to the "checkout" page on the defendant's distributor's website), select the exact type of "DARK HORSE" spirits they wanted to purchase, add the physical product to their online "shopping cart," and provide shipping and payment information. *Id.* (emphasis in original). The *Mor-Dall* court found noteworthy the fact that, "[w]ith regard to shipment, . . . a dropdown box presents the option of shipment to Michigan." *Id.* at 878-79.

In holding that the defendant spirits producer had "purposefully availed itself of the privilege of acting in Michigan," the *Mor-Dall* court relied heavily on the Sixth Circuit's analysis in *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472 (6th Cir. 2003). *See id.* at 879-80. In *Bridgeport*, one defendant, an independent record label located in Florida alleged to have illegally exploited the plaintiff's sound recordings, had filed a Rule 12(b)(2) motion to dismiss, asserting no personal jurisdiction in Tennessee, which was granted by the district court. *Bridgeport Music*, 327 F.3d at 475-77. The plaintiff appealed to the Sixth Circuit, which focused, in part, on the defendant's website in reversing the district court's grant of the

- 4 -

Case 3:14-cv-00957   Document 70   Filed 05/27/15   Page 4 of 15 PageID #: 2296
7/3652858.1

defendant's Rule 12(b)(2) motion. *See id.* at 483-84.[2] The Sixth Circuit first looked at the interactive nature of the Florida record label's website: users were able to access its catalog and purchase its records. *Id.* at 484. Next, it looked at the "volume of business" conducted by the Florida record label through its website, specifically at the number of purchases of the allegedly infringing recordings <u>by Tennessee residents</u>. *Id.* The *Bridgeport* court did not analyze how many purchases would be considered enough to satisfy the purposeful availment prong of specific personal jurisdiction; it just stated that the "cumulative facts"[3] viewed in the plaintiff's favor led to a prima facie finding of purposeful availment. *See id.*[4]

The *Mor-Dall* and *Bridgeport* cases are vastly different than the instant case. The most

---

[2] The *Bridgeport* court also discussed the defendant's nationwide distribution agreement (defining the territory for distribution as "the United States of America, its territories and possessions, and Puerto Rico") as a basis for finding personal jurisdiction in Tennessee. *Id.* In so finding, the *Bridgeport* court relied exclusively on the Sixth Circuit's analysis in *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528 (6th Cir. 1993). As already discussed in SAAR's earlier Reply brief (Dkt. 28, pp. 8-9), *Tobin* is readily distinguishable from the instant case, namely because *Tobin* involved the sale of a drug into the forum state, which ultimately harmed a resident of that state, and the defendant in *Tobin* retained tight control over the packaging inserts for the drugs and engaged a distributor to actively market its drug in all 50 states. (SAAR's Reply at 8.) Here, none of those facts are even remotely similar. There is no physical product involved. There is no "tight control" over the sound recordings at issue; they were merely placed into the stream of commerce, without the requisite "something more" (referring to Justice O'Connor's "stream of commerce plus" theory set forth in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)), for download via third-party websites, at some point in time, by Internet users all over the world. Further, SAAR's distribution agreement with Believe is <u>worldwide</u>, not nationwide, thus, it is not <u>specifically</u> targeting the United States (let alone Tennessee); the United States is merely one territory of many included in SAAR's distribution deal with Believe. Notwithstanding, the Court should also note that *Bridgeport* was decided more than 8 years before the U.S. Supreme Court's decision in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), whereby the Court held that, although there may be "an intent to serve the U.S. market," that does not mean that a defendant purposefully avails itself of the market of a particular state, *id.* at 2790.

[3] These facts were not just derived from the interactivity of the record label's website; they were also derived from the nationwide distribution agreement discussed in Footnote 2 above, among other things. *See id.* at 483-84.

[4] It is also noteworthy that, unlike the instant case, when the *Bridgeport* court ruled on the plaintiff's Rule 12(b)(2) motion, the plaintiff had not yet had an opportunity to engage in any discovery. *See id.* at 484. Here, Plaintiff had 90 days to conduct jurisdictional discovery. (Mem. & Order at 11-12, Dkt. 65.) Notwithstanding, Plaintiff does not dispute the number of Tennessee sales that have occurred in this case. (Pl.'s Suppl. Resp. at 13, Dkt. 68.)

striking difference is the facts surrounding SAAR's website. While SAAR has already discussed, in part, how its website operates (SAAR's Reply at 4-5, Dkt. 28), further discussion herein is warranted. On SAAR's website, www.saarrecords.it, a user can click on various artists and albums and eventually be redirected to iTunes to complete the purchase of such sound recordings. ***Notably, there is no evidence in the record that any of the Point Classics sound recordings at issue in this action are, or ever were, available for purchase through SAAR's website.*** In both *Mor-Dall* and *Bridgeport*, the allegedly infringing products (one of which was physical product in the form of bottles of spirits) were clearly available for purchase through each of the applicable defendant's websites. *See Bridgeport Music*, 327 F.3d at 484; *Mor-Dall Enters.*, 16 F. Supp. 3d at 877-78. Here, the only evidence in the record with respect to the availability for purchase of any of the Point Classics sound recordings at issue are unauthenticated screen shots of a few of the recordings (with no date or web address details) that appear to have been captured at some point in time directly from Apple's iTunes website, not SAAR's website (Pl.'s Resp. at Ex. B, Dkt. 22), and screen shots of a few of the recordings purchased by Plaintiff's counsel directly from Apple's iTunes website, not SAAR's website (*id.* at Ex. D). None of those screen shots provide any requisite link to SAAR, and certainly none of those screen shots prove that SAAR's website "is interactive to a degree that reveals specifically intended interaction with residents of [Tennessee]." *See Mor-Dall Enters.*, 16 F. Supp. 3d at 877 (quoting *Neogen*, 282 F.3d at 890).[5]

---

[5] Plaintiff also attaches to its Supplemental Response a screen shot of SAAR's home page and corresponding link to Apple's iTunes website for the purchase of sound recordings by an artist named Riky Anell. (Pl.'s Suppl. Resp. at 7, Ex. M.) This is a red herring. Neither that artist nor sound recordings of that artist are related in any way to the Point Classics sounds recordings at issue in this action or to whether this Court has specific personal jurisdiction over SAAR.

Though the purposeful availment analysis should readily end there, unlike the Kansas-based small-batch spirits producer in *Mor-Dall*, SAAR does <u>not</u> have an interactive process through its website whereby a consumer selects "Tennessee" via a dropdown box to designate the location for shipment of the allegedly infringing product. *See Mor-Dall Enters.*, 16 F. Supp. 3d at 878. Though Plaintiff could argue that this distinction is not critical due to the fact that *Mor-Dall* involves physical product while the instant case involves a digital product whereby no physical location need be determined (a distinction which even further proves *Mor-Dall's* dissimilarity to the instant case), because the *Mor-Dall* court relied so much on the *Bridgeport* court's analysis to find purposeful availment (and *Bridgeport* involved a digital product like the instant case), it is also important to use *Bridgeport's* "volume of business" approach in analyzing whether purposeful availment could possibly exist in the instant case.

In *Bridgeport*, while the exact number and percentage of sales to a Tennessee resident is unclear from the court's analysis, there was enough volume of sales <u>of the allegedly infringing sound recordings at issue, through the defendant's website</u>, to support a finding of purposeful availment. In contrast, here, there is evidence that, at most, there were 11 out of 849 digital purchases of the Point Classics sound recordings at issue in this action in the United States by consumers with an identifiable Tennessee zip code. (Pl.'s Suppl. Resp. at 13; *see also* Believe's Suppl. Mem. at 6, Ex. D, Dkt. 69.)[6] This represents 1.29 % of all U.S. digital purchases (reduced to 1.06 % when you exclude the at least 2 purchases made by Plaintiff's counsel). Certainly, this miniscule quantity alone is insufficient for a finding of purposeful availment. (*See* Believe's

---

[6] Out of those 11, at least 2 were purchased directly by Plaintiff's counsel after this litigation commenced. (Pl.'s Suppl. Resp. at 13.) However, as Believe has succinctly and correctly argued in its Supplemental Memorandum, Plaintiff "cannot use its counsel's purchase of downloads as a factual predicate for personal jurisdiction." (Believe's Suppl. Mem. at 7, citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994).)

Suppl. Mem. at 7, citing various cases supporting this proposition.)  **<u>*Most significantly, however, is that there is no evidence that any of these 11 (or 9) digital purchases originated through visiting SAAR's website rather than through directly visiting Apple's iTunes website for such purchases.*</u>**  Thus, that fact alone, as explained above, is enough to distinguish the instant case from *Bridgeport* and *Mor-Dall*, and it is clearly enough to show that SAAR's website does <u>not</u> explicitly target Tennessee residents enough for a finding of purposeful availment of the privilege of acting in Tennessee.  To hold otherwise would be to turn long-standing personal jurisdiction jurisprudence on its head.

In another failed attempt to try and paint SAAR's website as sufficiently interactive to warrant a finding of purposeful availment in Tennessee, Plaintiff also mentions in its Supplemental Response that, at some point in time, a search of SAAR's online licensing catalog resulted in finding "multiple Point Classics recordings" at issue in this action, but that those listings have "mysteriously" disappeared from SAAR's website. (Pl.'s Suppl. Resp. at 7-8, Ex. N.)[7]  Regardless of the veracity of this statement, Plaintiff omits some key information proving that SAAR's online licensing catalog not only is unrelated to the digital purchase analysis discussed above (and in *Bridgeport*), but it also is a rather static component of SAAR's website and does not target any specific person in any specific jurisdiction (let alone Tennessee).  To further explain, when a user visits SAAR's website, there is a "Licensing" link on its homepage, which takes the user to a another link where the user can browse through a catalog of sound

---

[7] Plaintiff also states that SAAR refused to respond to discovery requests about its "WebFile Portal." (*Id.*)  This statement is untrue.  SAAR <u>objected</u> to Plaintiff's discovery requests on this topic on the basis that they were not related to the issue of specific personal jurisdiction.  Plaintiff had an opportunity to challenge SAAR's position and file a motion to compel (Order, Dkt. 67), but it failed to do so.  Thus, Plaintiff should not now be permitted to use this as an excuse for failing to obtain information pertinent to the question of specific personal jurisdiction in Tennessee (which, regardless, this is not).

recordings available for licensing and then fill out a form with a specific licensing request. (Pl.'s Suppl. Resp. at 7-8, Ex. N.)[8] The user then has to wait for a response from SAAR. There is no guarantee that a license will be granted or that a response will be made by SAAR to the inquiring party. Further (and notably), anyone in the world with Internet access can fill out the licensing request form. Thus, there is nothing more to SAAR's online licensing catalog and request form that connect them to users in the State of Tennessee, other than Tennessee being a part of the world. This is <u>far</u> short of the "something more" requirement for a finding of specific personal jurisdiction. *See Bridgeport Music*, 327 F.3d at 480 (adopting Justice O'Connor's "stream of commerce 'plus' approach" from *Asahi*).

The final two cases cited by Plaintiff in support of its baseless website arguments for purposeful availment – *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161 (D. Conn. 1996) and *EDIAS Software Int'l v. Basis Int'l*, 947 F. Supp. 413 (D. Ariz. 1996) – are easily distinguishable without much analysis. First, these are out-of-jurisdiction cases that are not binding on this Court. Second, both of these cases are from 1996, a year in which the modern Internet was a very new concept with much less sophistication, complexity, and websites than what exists in 2015. Notwithstanding, in *Inset*, a computer software developer and marketer named Inset Systems, Inc., incorporated in Connecticut and with a federal trademark for INSET, filed a trademark infringement action in the Connecticut federal district court against a computer technology and support company named Instruction Set, Inc., incorporated in Massachusetts but using "INSET.COM" as its Internet domain address and a toll-free telephone number "1-800-

---

[8] The form has fields for name, company, email address, title track for licensing, and message. (*Id.*) There is no field requesting that the user provide his or her specific location. Additionally, the catalog of sound recordings appears as an Excel spreadsheet and does not contain any hyperlinks to third-party websites such as iTunes. It merely allows users to search, <u>not</u> purchase.

US-INSET" to advertise its goods and services. *Inset Sys.*, 937 F. Supp. at 162-63. The defendant filed a motion to dismiss for lack of personal jurisdiction, alleging that it had no employees or offices in Connecticut and did not conduct business there on a regular basis. *Id*. The district court denied its motion, claiming that the blatant use and marketing of "INSET" in the defendant's Internet domain address and toll-free number would have reached tens of thousands of Connecticut consumers and that this was enough to show that the defendant had purposefully availed itself of the privilege of doing business within Connecticut, <u>a neighboring state</u>. *Id.* at 165-66. In stark contrast, here, SAAR has not been using Plaintiff's trademarks in its Internet domain address or in any other advertisements. It is a small Italian record label, focusing on children's music, with no contacts with or connections to Tennessee. This is a copyright infringement action by a United Kingdom-based plaintiff against French, Italian, and United Kingdom-based defendants. In short, there are no similar facts between the instant case and *Inset* that warrant a comparison, let alone a finding of specific personal jurisdiction over SAAR in Tennessee based on such a comparison.

Similarly, in *EDIAS*, the plaintiff and defendant were Arizona and New Mexico companies, respectively, that had entered into a software products distribution contract. *EDIAS Software*, 947 F. Supp. at 415. When the defendant allegedly breached the contract, the plaintiff sued in Arizona federal district court. *Id.* The court ultimately denied the defendant's Rule 12(b)(2) motion to dismiss, citing a number of facts giving rise to Arizona as a proper jurisdictional forum, including that the parties' contract required the defendant to invoice products to Arizona, the plaintiff paid its invoices from an Arizona bank account, and the

defendant's employees often visited Arizona (again, a neighboring state). *See id.* at 418.[9] As with *Inset*, there are no facts even remotely similar when comparing *EDIAS* with the instant case. As discussed at length in SAAR's Memorandum and Reply (Dkts. 20, 28), SAAR has no contacts with or connections to Tennessee.[10]

Finally, Plaintiff attempts to direct the Court's attention to "massive discrepancies amongst the purported accountings" of SAAR and Believe in order to somehow argue that there is specific personal jurisdiction over both in Tennessee. (Pl.'s Suppl. Resp. at 8-9.) Though this is entirely untrue (*see* Believe's Suppl. Mem. at 6-9), it is irrelevant. As already discussed, there is no dispute over the amount of Tennessee sales at issue in this action. (Pl.'s Supp. Resp. at 13.) Aside from that, accounting figures for the rest of the United States and the world, which allegedly show the extent of infringing activity and earnings based on the same, <u>has nothing to do with specific personal jurisdiction over SAAR in Tennessee</u>.

Thus, for all of the reasons discussed above and in SAAR's previous motion to dismiss filings (Dkts. 20, 28), Plaintiff has clearly failed to prove the "purposeful availment" prong for a finding of specific personal jurisdiction over SAAR in the State of Tennessee. As such, SAAR's Rule 12(b)(2) motion to dismiss should be granted.

### B. Plaintiff's Cause of Action Against SAAR Does Not Arise From SAAR's Activities in Tennessee.

While the jurisdictional analysis can end after the "purposeful availment" prong, SAAR

---

[9] While the *EDIAS* court discussed the expansiveness of and ease of access to the Internet, this was <u>not</u> the basis for the court finding specific personal jurisdiction. *See id.* at 419-20.

[10] Plaintiff also cites to *Penguin Group (USA), Inc. v. American Buddha*, 946 N.E.2d 159, 163-64 (N.Y. 2011) in support of its argument that SAAR has purposefully availed itself of the privilege of acting in Tennessee. (*Id.* at 9-10.) For the same reasons that Believe distinguishes this case (Believe's Suppl. Mem. at 9), so too does SAAR.

stands on its arguments contained in its earlier filings (Dkts. 20, 28) on the second "arising from" prong. (SAAR's Mem. at 9-10, Dkt. 20; SAAR's Reply at 10-11, Dkt. 28.) Further, SAAR incorporates herein by reference Believe's additional arguments on this prong. (Believe's Suppl. Mem. at 10.) Plaintiff has offered nothing new in its Supplemental Response that affects SAAR's position. (*See* Pl.'s Suppl. Resp. at 10-12.)

### C. Tennessee Has No Interest in Resolving This Dispute, So This Court's Exercise of Jurisdiction Over SAAR Would Not Be Reasonable.

Similarly, SAAR stands on its arguments contained in its earlier filings (Dkts. 20, 28) on the third and final "reasonableness" prong. (SAAR's Mem. at 10; SAAR's Reply at 11-12.) Further, SAAR incorporates herein by reference Believe's extensive, additional arguments on this prong. (Believe's Suppl. Mem. at 10-19.) Most significantly, Plaintiff's assertion that the twice-removed Tennessee entity (Point Classics, LLC) that was administratively dissolved in 2008 still retains a significant interest this litigation (*see* Pl.'s Suppl. Resp. at 12-14) is <u>clearly disingenuous</u> based on the evidence in the record.

## PLAINTIFF'S CROSS MOTION IN THE ALTERNATIVE TO TRANSFER VENUE SHOULD BE DENIED

Facing impending dismissal for lack of personal jurisdiction, Plaintiff makes one last-ditch attempt to salvage this litigation by moving in the alternative for transfer to the U.S. District Court for the Eastern District of New York. (Pl.'s Suppl. Resp. at 15-20.) Except for a passing reference to SAAR in a footnote (*see id.* at 18 n.14), Plaintiff only discusses Believe's purported connections to the Eastern District of New York as a basis for transfer to that venue.[11]

---

[11] Because none of those arguments involve SAAR's contacts or connections, SAAR will not address them here and, instead, directs the Court to Believe's arguments against transfer, which SAAR fully incorporates herein. (*See* Believe's Suppl. Mem. at 19-20.)

Without citing any legal authority, Plaintiff merely states that "wherever jurisdiction may be found for Believe, it must be found for SAAR since SAAR's activities are at the root of the infringement claim." (Pl.'s Suppl. Resp. at 18 n.14.) This proposition is false. Had Plaintiff bothered to research this unsupported proposition, it surely would have discovered the basic tenet that "[p]ersonal jurisdiction must be analyzed and established ***over each defendant independently***." *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis added). Thus, even if a court were to have jurisdiction over one defendant, it does not mean that it would automatically have jurisdiction over other defendants. *See id.* As such, Plaintiff's Cross Motion should readily be denied.

## CONCLUSION

For all of the foregoing reasons, and all the reasons contained in SAAR's previously-submitted Rule 12(b)(2) briefs (Dkts. 20, 28), SAAR respectfully requests that its Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 19) be granted and for such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ Jeffrey L. Allen
Samuel D. Lipshie (No. 9539)
(615) 252-2332
slipshie@babc.com

Patricia Head Moskal (No. 11621)
(615) 252-2369
pmoskal@babc.com

Jeffrey L. Allen (No. 26782)
(615) 252-2377
jallen@babc.com

BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 1600
P.O. Box 340025
Nashville, TN 37203

*Attorneys for Defendant S.A.A.R. SrL*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served through the Court's electronic case filing system on the following:

>Jason L. Turner
>Jennifer S. Ghanem
>KELLER TURNER RUTH ANDREWS
>    GHANEM & HELLER , PLLC
>700 12th Avenue South, Suite 302
>Nashville, TN  37203
>jason@ktrlawgroup.com
>jennifer@ktrlawgroup.com
>
>David M. Given
>PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
>39 Mesa Street, Suite 201
>The Presidio
>San Francisco, CA 94129
>dmg@phillaw.com
>
>John J. Griffin, Jr.
>Michael A. Johnson
>KAY, GRIFFIN, ENKEMA & COLBERT, PLLC
>222 Second Avenue North, Suite 340M
>Nashville, TN 37201
>John.Griffin@kaygriffin.com
>mjohnson@kaygriffin.com

and by international mail service on the following parties at the most recent addresses indicated on the summonses or alias summons issued to them for purposes of service of process:

>Henry Hadaway Organisation, Ltd.
>HHO Licensing Limited
>c/o Henry Hadaway
>Henry Hadaway
>Suite C&D Tribec House
>58-60 Edward Road
>New Barnett
>Hertfordshire  En4 8AZ

on this the 27th day of May, 2015.

>/s/ Jeffrey L. Allen
>Jeffrey L. Allen